UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO MODESTO ESTRADA-SAMAYOA,<br><br>            Petitioner,<br><br>    v.<br><br>ORESTES CRUZ, et al.,<br><br>            Respondents. | No.  1:25-cv-01565-EFB (HC)<br><br>ORDER |

     Petitioner Estrada-Samayoa is a noncitizen in the custody of Immigrations and Customs Enforcement ("ICE") seeking habeas corpus relief.  Petitioner alleges that he arrived in the United States as a child, in 1998, and was briefly detained before being released on his own recognizance.  In 2022, his case was administratively closed upon the agreement of the parties, after petitioner's I-130 petition was approved.  On June 18, 2025, ICE agents arrested petitioner at his job and transported him to a detention facility in San Diego, California, then to a facility in McFarland, California, where he remains detained currently.

     On November 14, 2025, petitioner filed a petition for writ of habeas corpus, ECF No. 1; and a motion for temporary restraining order, ECF No. 2.  For the reasons set forth below, the Court grants petitioner's motion for a temporary restraining order.[1]

---

[1] Respondents have waived oral argument.  ECF No. 7 at 1.  The Court concludes that oral

1

# BACKGROUND[2]

Petitioner is a citizen and national of Guatemala who entered the United States in 1998, when he was seventeen years old. ECF No. 1 ¶¶ 60-61. Shortly after entry, petitioner was detained by the Immigration and Naturalization Service, then released on his own recognizance, with notice to appear at removal proceedings. ECF No. 1 ¶ 62 & Ex. B & Ex. C. The release order stated that petitioner's release was pursuant to section 236 of the Immigration and Nationality Act, i.e., 8 U.S.C. § 1226. ECF No. 1, Ex. C.

On January 5, 1999, a removal order was entered against petitioner in abstentia; petitioner avers that he did not receive proper notice of the removal hearing. ECF No. 1 ¶ 64. On August 23, 2007, petitioner married his spouse, a United States citizen. *Id*. ¶ 65 & Ex. E. On May 25, 2017, petitioner filed a motion to reopen proceedings and request for stay of deportation on the basis that he had not received notice of the 1999 removal hearing, and also filed a Form I-589. *Id*. ¶¶ 66-67. On June 20, 2017, the Immigration Court granted petitioner's motion to re-open proceedings. *Id*. ¶ 68. On July 7, 2017, petitioner's spouse filed Form I-130 (Petition for Alien Relative) on behalf of petitioner, which was approved on November 27, 2018. *Id*. ¶ 69 & Ex. F at 13 (Form I-130 Approval Notice). On April 8, 2019, Petitioner filed an EOIR 42B (Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents). *Id*. ¶ 70. On July 13, 2022, an Immigration Judge granted petitioner's motion to administratively close proceedings, upon the agreement of the parties, based on the approval of petitioner's I-130 petition. *Id*. ¶ 71 & Ex. H.

On June 18, 2025, petitioner was arrested by ICE agents at his employment. ECF No. 1 ¶ 72. He was transported to a detention center in San Diego, then to the Golden State Annex

---

argument would not materially assist it in resolution of petitioner's motion and resolves the motion on the parties' filings.

[2] Petitioner's verified petition establishes the facts articulated in this section. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)). In their opposition to petitioner's motion for temporary restraining order, respondents do not dispute any of the factual averments set forth in this section. *See* ECF No. 7.

detention facility in McFarland, California, where he is currently detained. *Id.* ¶ 73 & Ex. J. On July 29, 2025, an Immigration Judge granted the Department of Homeland Security's ("DHS") motion to re-calendar administratively closed proceedings, over petitioner's opposition. *Id.* ¶¶ 74-76 & Ex. H. On August 21, 2025, petitioner filed a motion for bond determination, with supporting documentation, in the Immigration Court; this was denied for lack of jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), on September 12, 2025. *Id.* ¶¶ 77-78 & Ex. I.

Petitioner initiated the instant action on November 14, 2025, concurrent with a motion for temporary restraining order. ECF Nos. 1-2. Respondents filed an opposition to the latter on November 18, 2025, ECF No. 7, and petitioner filed a reply on November 20, 2025. ECF No. 12. On November 20, 2025, this matter was assigned to the undersigned for all proceedings, pursuant to the parties' consent. ECF No. 9. The same day, the Court entered an order directing respondents to file an answer or return to the petition within fourteen days. ECF No. 10.

Petitioner avers, and has presented evidence in support, that since his arrival in the United States, he has married and had three children, the youngest of whom is only ten years old. ECF No. 1 ¶¶ 79-86. He is "a deeply involved father who provides both emotional and financial support for his USC children. He plays a consistent and nurturing role in their upbringing, offering stability, guidance, and a secure home environment that is centered on family values and mutual support." *Id.* ¶ 82. Consistent with this description, petitioner's seventeen-year-old son suffered a crisis shortly after petitioner's arrest: medical records demonstrate that he was admitted to the emergency department of a local hospital for a fractured hand and alcohol intoxication on July 23, 2025, but was held until July 25, 2025 on a psychiatric hold. *Id.* ¶¶ 83-85 & Ex. M. His treating physician attributed his fractures to "intentional self-harm," due to "[s]tressful life events affecting family and household," namely, petitioner's recent arrest. *Id.*, Ex. M. Since then, petitioner's son has remained in mental health crisis, reporting ongoing suicidality. *Id.* ¶ 83. Petitioner also avers that he provides daily support and caretaking for his spouse, who suffers from multiple serious medical conditions, and provides medical monitoring and care to his youngest child. *Id.* ¶¶ 80-81, 86.

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, the plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the Government is the opposing party to a request for temporary restraining order, the third and fourth factors "merge" in the court's analysis. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The first factor, "[l]ikelihood of success on the merits[,] is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**DISCUSSION**

In his petition, petitioner raises two claims for relief. In his first claim, he alleges that his detention pursuant to 8 U.S.C. § 1225(b)(2) is unlawful under the INA and, in his second claim, he alleges that his detention violates his due process rights. ECF No. 1 ¶¶ 91-97. Petitioner requests the court issue a temporary restraining order directing respondents to release him from their custody and, if they seek to re-detain him, such re-detention may not occur without petitioner a pre-deprivation bond hearing before a neutral decisionmaker pursuant to 8 U.S.C. §1226(a) with at least seven days' advance notice. ECF No. 2-3 at 2. Petitioner also requests that the court enjoin respondents from relocating petitioner outside of the geographical jurisdiction of the Eastern District of California pending final resolution of this case. *Id*.

////

Respondents raise no opposition to the grounds for petitioner's request for temporary restraining order, except to assert that petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b). ECF No. 7 at 1-2. For the reasons explained below, the court grants petitioner's motion.

### A. Likelihood of Success on the Merits

Petitioner has demonstrated a likelihood of success on both of his claims for relief, militating towards the issuance of his requested temporary restraining order.

#### 1. Claim One

In claim one, petitioner alleges that he is not subject to the provisions of 8 U.S.C. § 1225(b) and thus his detention pursuant to that section violates the Immigration and Nationality Act. ECF No. 1 ¶¶ 91-93. Respondents counter that petitioner meets the definition codified in § 1225(a), of an "an applicant for admission", as he is an alien "who 'is present' in the United States but 'has not been admitted' to the United States," thereby subjecting him to the mandatory detention provisions of § 1225(b)(2)(A). ECF No. 7 at 2 (quoting 8 U.S.C. § 1225(a)(1)).

Petitioner has demonstrated a likelihood of success on the merits of his claim that his present detention violates the INA such that a writ of habeas corpus should issue. *See* 28 U.S.C. § 2241(c)(3). Respondents do not dispute that petitioner entered the United States in October 1998 and was released on his own recognizance in November 1998 "[i]n accordance with section 236 of the Immigration and Nationality Act." ECF No. 1 ¶¶ 61-62 & Ex. C; *see* ECF No. 7. Section 236 of the INA is codified as 8 U.S.C. § 1226. *See* June 27, 1952, c. 477, Title II, c. 4, § 236, 66 Stat. 200; Pub.L. 104-208, Div. C, Title III, §§ 303(a), 371(b)(5), Sept. 30, 1996, 110 Stat. 3009-585, 3009-645. Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted). Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States'" and "'may release' a[] [noncitizen] detained under § 1226(a) 'on . . . bond' or 'conditional parole,'" except as provided under section 1226(c). *Jennings v. Rodriguez*, 583 U.S.

281, 288 (2018) (quoting 8 U.S.C. § 1226(a)); *see also Thuraissigiam*, 591 U.S. at 108. Respondents do not argue that the exceptions of section 1226(c) are implicated here.  *See* ECF No. 7.

Once a noncitizen is conditionally released or paroled under § 1226(a), the statute and regulations guarantee him certain protections before he is re-detained or removed.  The Court of Appeals has summarized,

> Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.  If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his release. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Barreiros*, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964).  The IJ considers various factors in making this determination, including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country. *Matter of Guerra*, 24 I. & N. Dec. at 40. The IJ also decides whether bond or other conditions on the alien's release are appropriate. *Id.*; *see* 8 U.S.C. § 1226(a)(2). The detainee may be represented by counsel and can submit evidence in support of his claims.  *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016).  He can also appeal an adverse decision to the BIA. *See* 8 C.F.R. § 236.1(d)(3).
>
> On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). The same procedures apply to this new hearing, and its outcome is also appealable to the BIA. *See generally id.* § 1003.19.

*Rodriguez Diaz*, 53 F.4th at 1197.

Respondents assert that none of these provisions apply to petitioner, notwithstanding his release in 1998 pursuant to the then-INS's authority under § 1226.  ECF No. 7 at 1-2; *see* ECF No. 1, Ex. C.  Per respondents, the Government is required to detain petitioner pursuant to § 1225(b)(2)(A).  Section 1225(b) reflects a specific "supplement [to] § 1226's detention scheme." *Rodriguez Diaz*, 53 F.4th at 1197.  It "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) ("Inspection of applicants for admission").  Under this section, an "applicant for admission" is defined as "[a] . . . [noncitizen] present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287.  Under section 1225(b)(2)(A), ICE is required to detain certain "applicant[s] for

1  admission[] if the examining immigration officer determines that [the] alien seeking admission is
2  not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Rodriguez*
3  *Diaz*, 53 F.4th at 1197.

4  Respondent's position is unpersuasive. As numerous courts have also held, section
5  1225(b) cannot apply to those noncitizens who are already present in the United States and who
6  had previously been released under section 1226(b). *See generally Menjivar Sanchez v. Wofford*,
7  No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025) (collecting
8  cases); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); *Reyes*
9  *v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13,
10 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D.
11 Cal. Sept. 23, 2025): *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at
12 *7 (C.D. Cal. Sept. 2, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at
13 *5-7 (D. Mass. July 7, 2025). The court adopts the cogent, detailed statutory analyses set forth in
14 *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D.
15 Cal. Oct. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025);
16 and *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D.
17 Cal. Sept. 23, 2025). In short, respondents' urged interpretation of section 1225(b) is untenable
18 under principles of statutory construction because it "would render superfluous provisions of
19 Section 1226 that apply to certain categories of inadmissible noncitizens," *Rodriguez*, 779 F.
20 Supp. 3d at 1258-59; *see also Gomes*, 2025 WL 1869299, at *7, and because it creates
21 irreconcilable contradictions in the statutory scheme as a whole. *See Salcedo Aceros*, 2025 WL
22 2637503, at *8. Respondents' interpretation also conflicts with the legislative history of 8 U.S.C.
23 § 1226, *Rodriguez*, 779 F. Supp. 3d at 1260, and the longstanding practices of the Department of
24 Homeland Security, which "inform[s]" the courts' understanding of the law. *Id*. at 1260-61
25 (*quoting Loper-Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *see also Salcedo Aceros v.*
26 *Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025).
27 For all of these reasons, the court finds that petitioner is likely to succeed on the merits of his
28 claim that his detention under 8 U.S.C. § 1225(b)(2)(A) violates the INA and, as such, entitles

7

1  him to habeas corpus relief.

2  **2. Claim 2**

3  Petitioner also has demonstrated a likelihood of success on the merits of his due process
4  claim. To determine whether civil detention violates a detainee's Fifth Amendment procedural
5  due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge,* 424 U.S.
6  319, 335 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be
7  affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through
8  the procedures used, and the probable value, if any, of additional or substitute procedural
9  safeguards"; and (3) "the Government's interest, including the function involved and the fiscal
10 and administrative burdens that the additional or substitute procedural requirement would entail."
11 *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We
12 examine procedural due process questions in two steps: the first asks whether there exists a liberty
13 or property interest which has been interfered with by the State, . . . the second examines whether
14 the procedures attendant upon that deprivation were constitutionally sufficient"). The *Mathews*
15 test applies in cases where a petitioner raises a due process challenge to his immigration
16 detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

17 Respondents argue that petitioner's due process claim must fail, because he is lawfully
18 detained under 8 U.S.C § 1225(b)(2)(A). ECF No. 7 at 1-2. For the reasons set forth above, this
19 position is unavailing; section 1225(b) does not authorize petitioner's current detention. Rather,
20 under *Mathews*, petitioner has shown a likelihood of success on the merits that his detention
21 without a bond hearing violates his due process rights.

22 **a. Petitioner Possessed a Protected Liberty Interest**

23 Respondents do not dispute that petitioner possesses a liberty interest to which due
24 process rights attach. *See* ECF No. 7 at 1-2. A protected liberty interest may arise from a
25 conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Even
26 when a statute allows the government to arrest and detain an individual, a protected liberty
27 interest under the Due Process Clause may entitle the individual to procedural protections not
28 found in the statute. *See id*. (Due Process requires pre-deprivation hearing before revocation of

8

preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

Petitioner's release is similar. Petitioner presented evidence that, after his release in 1998, he has created and maintained deep ties to his community. He married a United States citizen in 2007, and he and his spouse are raising three children. The depth of his connection to his family is evinced by evidence of his ongoing medical caretaking of his wife, his vigilance and caretaking of his youngest child's medical needs, and by the apparent mental health crisis precipitated in one of his children by petitioner's arrest. ECF No. 1 ¶¶ 79-86 & Exs. K, L, M. He is not only employed but runs his own business. ECF No. 2 at 21. When INS released petitioner on his own recognizance in 1998, this reflected a determination that he did not pose a flight risk or danger to the community, *see Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8), and petitioner avers that he presently remains neither a flight risk nor danger to the community, ECF No. 1 ¶ 88, which respondent does not dispute. *See* ECF No. 7 at 1-2. In all material respects, therefore, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*. *See Morrissey*, 408 U.S.

at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Accordingly, the Court finds that, pursuant to *Morrissey* and its progeny, petitioner does have a liberty interest in his release, implicating his rights under the Constitution's Due Process clause. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970 (reaching the same conclusion for a paroled noncitizen); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

### b. Petitioner Is Entitled to A Bond Hearing

Petitioner has also demonstrated his likelihood of succeeding in demonstrating that the second and third *Mathews* factors militate in his favor, such that he is likely to succeed on claim two. Without a bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention, is considerable. Detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. There is nothing in the record indicating that either circumstance is present here, as respondents do not dispute petitioner's averment that he is neither a flight risk nor a community danger. *See* ECF No. 7 at 1-2; *see generally* ECF No. 1 ¶ 88. Without any procedural safeguards to determine whether petitioner's detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).

Respondents' interest in petitioner's detention is low. *See Ortega*, 415 F. Supp. 3d at 970.

"[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

Thus, having found that petitioner has a liberty interest and that he is entitled to a bond hearing before a neutral arbiter at which the justification for his detention is proven by the Government, the Court finds that petitioner has established a likelihood of success on the merits of his due process claim.

### B. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief, which respondents do not dispute. *See* ECF No. 7 at 1-2. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Rodriguez*, 779 F. Supp. 3d at 1262. Petitioner has thus established irreparable harm.

### C. Balance of the Harms and Public Interest

The final two *Winter* factors merge when the government is the nonmoving party, *Baird*, 81 F.4th at 1040, and respondents do not dispute that these factors weigh in favor of the issuance of a temporary restraining order. *See* ECF No. 7 at 1-2. Broadly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, specific to the

11

harms and public interest implicated by unlawful immigration detention, the analysis of the *Pinchi* court is persuasive here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk—while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 792 F.Supp.3d at 1037-38. As noted, here there appears to be no dispute as to petitioner's risk of flight or danger to the community. *See generally* ECF No. 7. For all of these reasons, the Court concludes that the equities and public interest weigh in favor of petitioner.

**D. Waiver of Exhaustion**

Petitioner requests that the Court waive the prudential exhaustion requirement, which respondents do not oppose. ECF No. 2 at 27-31; ECF No. 7 at 1-2. The Court finds waiver appropriate here.

"Exhaustion can be either statutorily or judicially required," but if "exhaustion is a prudential requirement, a court has discretion to waive the requirement." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). The federal "[d]istrict courts are authorized by 28 U.S.C § 2241 to consider petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Section 2241 "does not specifically require petitioners to exhaust direct appeals before

12

1  filing petitions for habeas corpus," but the Court of Appeals "require[s], as a prudential matter,
2  that habeas petitioners exhaust available judicial and administrative remedies before seeking
3  relief under § 2241." *Id*.

4  "[C]ourts may require prudential exhaustion if (1) agency expertise makes agency
5  consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of
6  the requirement would encourage the deliberate bypass of the administrative scheme; and (3)
7  administrative review is likely to allow the agency to correct its own mistakes and to preclude the
8  need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation
9  marks and citation omitted). Even if these factors all weigh in favor of prudential exhaustion,
10 however, "a court may waive the prudential exhaustion requirement if administrative remedies
11 are inadequate or not efficacious, pursuit of the administrative remedies would be a futile gesture,
12 irreparable injury will result, or the administrative proceedings would be void." *Hernandez v.*
13 *Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (internal quotation marks and citation omitted).

14 Here, petitioner argues the prudential exhaustion requirement should be waived because
15 exhaustion would be futile, would subject him to irreparable injury, and would be unreasonable
16 given the delays presently inherent in administrative review. ECF No. 2 at 27-31. The Court
17 agrees that waiver of petitioner's exhaustion of administrative remedies is appropriate. Petitioner
18 has demonstrated that presentation of his claims to the BIA would be futile in light of the BIA's
19 decision in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 20025). *See J.A.C.P. v. Wofford*,
20 No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7, n.9 (E.D. Cal. Oct. 27, 2025).
21 Petitioner has also demonstrated that delays at the BIA render it unlikely that his claims would be
22 adjudicated in a timely fashion. *See Perez v. Wolf*, 445 F. Supp. 3d 275, 286 (N.D. Cal. 2020).
23 Taking these considerations into account, and in light of the Court's finding *ante* that petitioner
24 has established a likelihood that he will suffer irreparable injury without a temporary restraining
25 order, the Court waives any prudential exhaustion requirement. *See Rodriguez v. Bostock*, 779 F.
26 Supp. 3d 1239, 1254 (W.D. Wash. 2025) (waiving prudential exhaustion requirement in similar
27 circumstances); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019); *J.A.C.P.*,
28 2025 WL 3013328, at *7, n.9; *Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO (HC), 2025

WL 2617256, at *3 (E.D. Cal. Sept. 9, 2025); *see generally Rodriguez Diaz v. Barr*, No. 4:20-CV-01806-YGR, 2020 WL 1984301, at *5 (N.D. Cal. Apr. 27, 2020) (collecting cases).

### E.  Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## CONCLUSION AND ORDER

Accordingly, petitioner's motion for temporary restraining order, ECF No. 2, is GRANTED. Respondents are ordered to immediately release petitioner from custody. Respondents may not re-detain petitioner without a pre-deprivation bond hearing before a neutral decisionmaker pursuant to 8 U.S.C. §1226(a) and its implementing regulations, with no less than seven days' notice to petitioner prior to the hearing.

The Court's order dated November 20, 2025 remains in effect, prohibiting respondents from transferring petitioner to another detention center outside of this judicial district, pending further order of the court. *See* ECF No. 10.

Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary injunction should not issue pending a final disposition of this matter. Respondents shall file any further response to petitioner's motion by December 1, 2025. Petitioner may file a reply by December 8, 2025.

/////

/////

/////

The parties may stipulate to extend this briefing schedule. This temporary restraining order, which is issued following briefing by both parties, shall remain in effect pending the Court's ruling on the motion for preliminary injunction.

Dated: November 24, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE