UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO MODESTO ESTRADA-SAMAYOA,<br><br>Petitioner,<br><br>v.<br><br>ORESTES CRUZ, et al.,<br><br>Respondents. | No.  1:25-cv-01565-EFB<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

      Petitioner Estrada-Samayoa is a noncitizen in the custody of Immigrations and Customs Enforcement (ICE) seeking habeas corpus relief.  Petitioner alleges that he arrived in the United States as a child, in 1998, and was briefly detained before being released on his own recognizance.  In 2022, his case was administratively closed upon the agreement of the parties, after petitioner's I-130 petition was approved.  On June 18, 2025, ICE agents arrested petitioner at his job and transported him to a detention facility in San Diego, California, then to a facility in McFarland, California.

      On November 14, 2025, petitioner filed a petition for writ of habeas corpus (ECF No. 1); and a motion for a temporary restraining order (TRO).  ECF No. 2.  On November 24, 2025, the court granted petitioner's motion for a TRO, ordering respondents to, *inter alia*, release petitioner from custody.  ECF No. 13.  In the same order, respondents were ordered to show cause why a preliminary injunction should not issue pending final resolution of this matter.  *Id.*  Respondents did not submit a response to the order to show cause, and on December 30, 2025, this court issued

1

an order requiring both parties to submit any supplemental briefing on the merits of the petition by January 6, 2026. ECF No. 15. Both parties filed responses submitting resolution of the petition on the existing record and previous briefing regarding the TRO motion. ECF Nos. 16 and 17. For the reasons set forth below, the petition for writ of habeas corpus is GRANTED.

**BACKGROUND**[1]

Petitioner is a citizen and national of Guatemala who entered the United States in 1998, when he was seventeen years old. ECF No. 1 ¶¶ 60-61. Shortly after entry, petitioner was detained by the Immigration and Naturalization Service (INS), then released on his own recognizance, with notice to appear at removal proceedings. ECF No. 1 ¶ 62 & Ex. B & Ex. C. The release order stated that petitioner's release was pursuant to section 236 of the Immigration and Nationality Act, *i.e.*, 8 U.S.C. § 1226. ECF No. 1, Ex. C.

On January 5, 1999, a removal order was entered against petitioner in absentia; petitioner avers that he did not receive proper notice of the removal hearing. ECF No. 1 ¶ 64. On August 23, 2007, petitioner married his spouse, a United States citizen. *Id*. ¶ 65 & Ex. E. On May 25, 2017, petitioner filed a motion to reopen proceedings and request for stay of deportation (on the basis that he had not received notice of the 1999 removal hearing) and also filed a Form I-589. *Id*. ¶¶ 66-67. On June 20, 2017, the Immigration Court granted petitioner's motion to re-open proceedings. *Id*. ¶ 68. On July 7, 2017, petitioner's spouse filed Form I-130 (Petition for Alien Relative) on behalf of petitioner, which was approved on November 27, 2018. *Id*. ¶ 69 & Ex. F at 13 (Form I-130 Approval Notice). On April 8, 2019, Petitioner filed an EOIR 42B (Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents). *Id*. ¶ 70. On July 13, 2022, an Immigration Judge granted petitioner's motion to administratively close proceedings, upon the agreement of the parties, based on the approval of petitioner's I-130 petition. *Id*. ¶ 71 & Ex. H.

---

[1] Petitioner's verified petition establishes the facts articulated in this section. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)). In their opposition to petitioner's motion for temporary restraining order, respondents do not dispute any of the factual averments set forth in this section. *See* ECF No. 7.

On June 18, 2025, petitioner was arrested by ICE agents at his employment. ECF No. 1 ¶ 72. He was transported to a detention center in San Diego, then to the Golden State Annex detention facility in McFarland, California. *Id*. ¶ 73 & Ex. J. On July 29, 2025, an Immigration Judge granted the Department of Homeland Security's ("DHS") motion to recalendar administratively closed proceedings, over petitioner's opposition. *Id*. ¶¶ 74-76 & Ex. H. On August 21, 2025, petitioner filed a motion for bond determination, with supporting documentation, in the Immigration Court; this was denied for lack of jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), on September 12, 2025. *Id*. ¶¶ 77-78 & Ex. I.

Petitioner initiated the instant action on November 14, 2025, concurrent with a motion for temporary restraining order, which was granted. ECF Nos. 1-2; 13. On November 20, 2025, this matter was assigned to the undersigned for all proceedings, pursuant to the parties' consent. ECF No. 9.

Petitioner avers, and has presented evidence in support, that since his arrival in the United States, he has married and had three children, the youngest of whom is only ten years old. ECF No. 1 ¶¶ 79-86. He is "a deeply involved father who provides both emotional and financial support for his USC children. He plays a consistent and nurturing role in their upbringing, offering stability, guidance, and a secure home environment that is centered on family values and mutual support." *Id*. ¶ 82. Consistent with this description, petitioner's seventeen-year-old son suffered a crisis shortly after petitioner's arrest: medical records demonstrate that he was admitted to the emergency department of a local hospital for a fractured hand and alcohol intoxication on July 23, 2025, but was held until July 25, 2025 on a psychiatric hold. *Id*. ¶¶ 83-85 & Ex. M. His treating physician attributed his fractures to "intentional self-harm," due to "[s]tressful life events affecting family and household," namely, petitioner's recent arrest. *Id*., Ex. M. Since then, petitioner's son has remained in mental health crisis, reporting ongoing suicidality. *Id*. ¶ 83. Petitioner also avers that he provides daily support and caretaking for his spouse, who suffers from multiple serious medical conditions, and provides medical monitoring and care to his youngest child. *Id*. ¶¶ 80-81, 86.

**LEGAL STANDARD**

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

**DISCUSSION**

In his petition, petitioner raises two claims for relief. In his first claim, he alleges that his detention pursuant to 8 U.S.C. § 1225(b)(2) is unlawful under the INA and, in his second claim, he alleges that his detention violates his due process rights. ECF No. 1 ¶¶ 91-97. Petitioner requests various relief, including a declaration that his detention is illegal, release from custody,[2] no re-detention without a bond hearing, and fees and costs under the Equal Access to Justice Act ("EAJA"). ECF No. 1 at 24-25.

Respondents' sole opposition to the petition for writ of habeas corpus, consisting of three brief paragraphs, is to assert that petitioner is "an applicant for admission" and thus lawfully detained pursuant to 8 U.S.C. § 1225(b). ECF No. 7 at 1-2; ECF No. 16. Respondent does not dispute the facts as established in petitioner's verified petition. *Id.*

**I.    Claim One**

In claim one, petitioner alleges that he is not subject to the provisions of 8 U.S.C. § 1225(b) and thus his detention pursuant to that section violates the Immigration and Nationality Act. ECF No. 1 ¶¶ 91-93. Respondents counter that petitioner meets the definition codified in section 1225(a), of an "an applicant for admission", as he is an alien "who 'is present' in the United States but 'has not been admitted' to the United States," thereby subjecting him to the mandatory detention provisions of § 1225(b)(2)(A). ECF No. 7 at 2 (quoting 8 U.S.C. § 1225(a)(1)).

////

---

[2] As discussed *supra*, this court has already ordered petitioner to be released from detention. ECF Nos. 10 and 13.

Petitioner has demonstrated that his detention violates the INA such that a writ of habeas corpus should issue. *See* 28 U.S.C. § 2241(c)(3). Respondents do not dispute that petitioner entered the United States in October 1998 and was released on his own recognizance in November 1998 "[i]n accordance with section 236 of the Immigration and Nationality Act." ECF No. 1 ¶¶ 61-62 & Ex. C; *see* ECF No. 7. Section 236 of the INA is codified as 8 U.S.C. § 1226. *See* June 27, 1952, c. 477, Title II, c. 4, § 236, 66 Stat. 200; Pub.L. 104-208, Div. C, Title III, §§ 303(a), 371(b)(5), Sept. 30, 1996, 110 Stat. 3009-585, 3009-645. Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted). Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States'" and "'may release' a[] [noncitizen] detained under § 1226(a) 'on . . . bond' or 'conditional parole,'" except as provided under section 1226(c). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)); *see also Thuraissigiam*, 591 U.S. at 108. Respondents do not argue that the exceptions of section 1226(c) are implicated here. *See* ECF No. 7.

Once a noncitizen is conditionally released or paroled under section 1226(a), the statute and regulations guarantee him certain protections before he is re-detained or removed. The Court of Appeals has summarized:

> Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19. If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his release. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Barreiros*, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964). The IJ considers various factors in making this determination, including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country. *Matter of Guerra*, 24 I. & N. Dec. at 40. The IJ also decides whether bond or other conditions on the alien's release are appropriate. *Id.*; *see* 8 U.S.C. § 1226(a)(2). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792

> (B.I.A. 2016).  He can also appeal an adverse decision to the BIA.  *See* 8 C.F.R. § 236.1(d)(3).
>
> On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances.  *See* 8 C.F.R. § 1003.19(e).  The same procedures apply to this new hearing, and its outcome is also appealable to the BIA.  *See generally id.* § 1003.19.

*Rodriguez Diaz*, 53 F.4th at 1197.

Respondents assert that none of these provisions apply to petitioner, notwithstanding his release in 1998 pursuant to the then-INS's authority under § 1226.  ECF No. 7 at 1-2; *see* ECF No. 1, Ex. C.  Per respondents, the Government is required to detain petitioner pursuant to section 1225(b)(2)(A).  Section 1225(b) reflects a specific "supplement [to] § 1226's detention scheme." *Rodriguez Diaz*, 53 F.4th at 1197.  It "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)."  *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) ("Inspection of applicants for admission").  Under this section, an "applicant for admission" is defined as "[a] . . . [noncitizen] present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287.  Under section 1225(b)(2)(A), ICE is required to detain certain "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A); *see Rodriguez Diaz*, 53 F.4th at 1197.

Respondent's position is unpersuasive.  As numerous courts have also held, section 1225(b) cannot apply to those noncitizens who are already present in the United States and who had previously been released under section 1226(b).  *See generally Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025): *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5-7 (D. Mass. July 7, 2025).  The court adopts the cogent, detailed statutory analyses set forth in

*Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); and *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025).

In short, respondents' urged interpretation of section 1225(b) is untenable under principles of statutory construction because it "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens," *Rodriguez*, 779 F. Supp. 3d at 1258-59; *see also Gomes*, 2025 WL 1869299, at *7, and because it creates irreconcilable contradictions in the statutory scheme as a whole. *See Salcedo Aceros*, 2025 WL 2637503, at *8. Respondents' interpretation also conflicts with the legislative history of 8 U.S.C. § 1226, *Rodriguez*, 779 F. Supp. 3d at 1260, and the longstanding practices of the Department of Homeland Security, which "inform[s]" the courts' understanding of the law. *Id*. at 1260-61 (*quoting Loper-Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025). For these reasons, the court finds that petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) violated the INA and, as such, petitioner is entitled to habeas corpus relief on this ground.

**II.    Claim 2**

Petitioner is also entitled to habeas corpus relief on his due process claim. To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge. See* 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines whether the procedures

1  attendant upon that deprivation were constitutionally sufficient"). The *Mathews* test applies in
2  cases where a petitioner raises a due process challenge to his immigration detention. *Rodriguez*
3  *Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

4  Respondents argue that petitioner's due process claim must fail, because he was lawfully
5  detained under 8 U.S.C § 1225(b)(2)(A). ECF No. 7 at 1-2. For the reasons set forth above, this
6  position is unavailing; section 1225(b) does not authorize petitioner's detention. Rather, under
7  *Mathews*, petitioner has demonstrated that any detention without a bond hearing violates his due
8  process rights.

### a. Protected Liberty Interest

10  Respondents do not dispute that petitioner possesses a liberty interest to which due
11  process rights attach. *See* ECF No. 7 at 1-2. A protected liberty interest may arise from a
12  conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Even
13  when a statute allows the government to arrest and detain an individual, a protected liberty
14  interest under the Due Process Clause may entitle the individual to procedural protections not
15  found in the statute. *See id*. (Due Process requires pre-deprivation hearing before revocation of
16  preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context);
17  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether
18  a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have
19  resolved the issue by comparing the specific conditional release in the case before them with the
20  liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d
21  864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

22  In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide
23  range of things open to persons" who have never been in custody or convicted of any crime,
24  including to live at home, work, and "be with family and friends and to form the other enduring
25  attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly
26  subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring
27  and seeking authorization to work and travel, his "condition is very different from that of
28  confinement in a prison." *Id*. "The parolee has relied on at least an implicit promise that parole

8

will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

Petitioner's release is similar. Petitioner presented evidence that, since his release in 1998, he has created and maintained deep ties to his community. He married a United States citizen in 2007, and he and his spouse are raising three children. The depth of his connection to his family is evinced by evidence of his ongoing medical caretaking of his wife, his vigilance and caretaking of his youngest child's medical needs, and by the apparent mental health crisis precipitated in one of his children by petitioner's arrest. ECF No. 1 ¶¶ 79-86 & Exs. K, L, M. He is not only employed but runs his own business. ECF No. 2 at 21. When INS released petitioner on his own recognizance in 1998, this reflected a determination that he did not pose a flight risk or danger to the community, *see Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8), and respondent does not dispute petitioner's statements that he remains neither a flight risk nor danger to the community. ECF No. 1 ¶ 88; ECF No. 7 at 1-2. In all material respects, therefore, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*. *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Accordingly, the Court finds that, pursuant to *Morrissey* and its progeny, petitioner has a liberty interest in his release, implicating his rights under the Constitution's Due Process clause. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970 (reaching the same conclusion for a paroled noncitizen); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26,

2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

### b. Bond Hearing

Petitioner is also entitled to relief based on the second and third *Mathews* factors. Without a bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention is considerable. Detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. There is nothing in the record indicating that either circumstance is present here, as respondents do not dispute petitioner's averment that he is neither a flight risk nor a community danger. *See* ECF No. 7 at 1-2; *see generally* ECF No. 1 ¶ 88. Without any procedural safeguards to determine whether petitioner's detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).

Furthermore, respondents' interest in petitioner's detention is low. *See Ortega*, 415 F. Supp. 3d at 970. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

Thus, because petitioner has a liberty interest and is entitled to a bond hearing before a neutral arbiter at which the justification for his detention is proven by the Government, petitioner is entitled to relief on claim 2 of his petition.

### CONCLUSION AND ORDER

Accordingly, for the reasons stated herein, the court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.
2. The parties shall file a joint status report within seven days of the date of this order

1 confirming that, consistent with the court's earlier orders, petitioner has been released from custody.

3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without a pre-deprivation bond hearing before a neutral adjudicator, who possesses authority to order release, at which the Government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his physical custody is required.

4. Upon receipt of the joint status report confirming petitioner's release from custody, the Clerk is directed to enter judgment and close this case.

5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED: February 17, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE